## NASHVILLE CHATTANOOGA & ST. LOUIS RY. CO. v. MRS. FRANKIE GRAHAM.

Western Section.    April 14, 1927.

Petition for Certiorari denied by Supreme Court, July 15, 1927.

1. **Appeal and error.  An assignment that the verdict is contrary to law is not equivalent to an assignment that there is no evidence to support the verdict.**
   An assignment that the verdict is contrary to or against the law or charge of the court is not equivalent to an assignment that there is no evidence to support the verdict and therefore is bad in the appellate court.

2. **Husband and wife.  A married woman could have a separate estate prior to the Emancipation Act.**
   A married woman could have a separate estate in personal property prior to the Woman's Emancipation Act; a separate estate may be created by parol gift, and express words are not required to create such an estate where a gift is from husband to wife.

3. **Husband and wife.  Prior to Emancipation Act a husband might relinquish his marital rights in his wife's estate.**
   The husband may waive his rights, and permit his wife to retain her money or other personal chattels; and whenever he manifests such intention, and shows by his conduct that he is not to have or derive any benefit from the personal property belonging to his wife, but that he intends it to remain

for her benefit, courts of equity will not deprive her of the property, and this is especially true when creditors are not deprived of any of their rights.

4. **Husband and wife. Evidence. Evidence held to show property involved in suit belonged to the wife.**

In an action by a married woman to recover damages from a railroad for killing her stock where the evidence showed that the stock was the increase of certain stock belonging to the wife when she married; that the marriage took place prior to the passage of the woman's emancipation act; that the husband had never claimed the stock as his, but had always recognized it as his wife's property, held that the wife could recover for the loss of the stock.

5. **Trespass. Possession alone is sufficient to support an action for trespass or trespass on the case.**

A vendee or bailee in possession of personal property may sue a third party for injuring the property, his possession along being sufficient to support the action.

6. **Trial. Instructions. A requested instruction must be strictly correct.**

An instruction requested must be strictly correct, otherwise the trial judge can not be put in error by his refusal to charge it.

Appeal in Error from Circuit Court, Fayette County; Hon. R. B. Baptist, Judge.

Affirmed.

H. C. Moorman & Son, of Somerville, and Frank Slemons, of Nashville, for plaintiff in error.

C. W. Crawford and C. A. Stainback, of Somerville, for appellee.

OWEN, J.  Mrs. Frankie Graham recovered a judgment in the circuit court of Fayette county against the defendant railway company for the killing of a number of cows and hogs by various engines and trains operated by the defendant railway through the farm of the plaintiff, which farm is located about two miles from Somerville, Tennessee.  Said stock was killed during the months of October, November and December, 1925.

This suit originated before a Justice of the Peace, and after judgment, was appealed to the circuit court where it was tried before the Circuit Judge and a jury.  After the verdict of the jury in favor of the plaintiff the defendant seasonably filed a motion for new trial, which was heard and overruled, and an appeal was prayed and granted to this court and the defendant has assigned four errors, being the same errors as set forth in defendant's motion for new trial.

The first error is that the verdict of the jury is not sustained by the evidence; the second error, the verdict of the jury is against the evidence; the third error, the verdict of the jury is against the law as charged by the court.  The fourth error complains of the action of the court in declining to charge defendant's special request No. 1, which was submitted at the conclusion of the court's general charge, said request being as follows:

"In this cause it is incumbent upon the plaintiff to establish by a preponderance of the evidence that she is the owner of the stock, cattle and hogs for the killing of which she brings this suit.

"If you find from the evidence in this case that the plaintiff Frankie Graham was married to C. W. Graham in the year 1904 and that at that time the plaintiff was the owner of some stock, hogs and cattle or other personal property and that the stock, hogs and cattle killed or injured by the defendant Railway Company, and for the killing of which she is suing the defendant Railway are the offspring of said stock owned by her at the time of her said marriage in 1904, and that she never then or at any time had or made any marriage contract or agreement of any kind with her said husband by which his marital rights in and to said property should not attach, then I charge you that upon the marriage of the plaintiff to and with her said husband C. W. Graham, the said stock, cattle and other personal property so then owned by her became his and the title to same was then vested in him and that the offspring of said stock, cattle and hogs would be the property of said husband and that the plaintiff would have no right or title thereto and could not maintain this action to recover against the defendant damages for the killing thereof, and if you should find the facts as above stated you should return a verdict in favor of the defendant and against the plaintiff."

There is no question made upon the amount of the judgment recovered, and it was conceded in the lower court that the defendant had failed to comply with the fencing statute regulating the fencing of railroads.

As to the first three assignments, none of these are equal to an assignment that there is no material evidence to sustain the verdict of the jury. An assignment that the verdict is contrary to or against the law or charge of the court is not equivalent to an assignment that there is no evidence to support the verdict, and hence is bad in this court. Record v. Cooperage Co., 108 Tenn., 657, 69 S. W., 334.

An assignment of error that the verdict is against the evidence, or what is the same thing, against the charge of the court, is wholly insufficient to challenge the sufficiency of the evidence to support the verdict. The assignment of error to be effective for this purpose, must aver that there is no evidence to support the verdict. Felton v. Clarkson, 103 Tenn., 457, 53 S. W., 733.

The first two assignments of error in the instant case are in reality assignments that the verdict of the jury is against the preponderance of the evidence, or against the weight of the evi-

dence, and these present no questions that can be considered by this court. Railroad v. Abernathy, 106 Tenn., 722, 64 S. W., 3.

The first three assignments of error are overruled and disallowed.

The trial judge charged the jury that it was incumbent upon the plaintiff to show by a preponderance of the evidence that before the institution of this suit the plaintiff was the owner of certain live stock alleged to have been killed, and that such live stock was killed on or near the track of the defendant by a moving train or engine or cars upon said track; that such live stock was of some value. He defined what was meant by a preponderance of the evidence. He also charged the law in regard to the fencing statute, and stated that the defendant admitted its railway track was not fenced at the point where said live stock was alleged to have been killed, but that the defendant denied all the other material allegations made by plaintiff. It is the defendant's insistence that this stock belonged to plaintiff's husband, C. W. Graham, and that under the general principles of the common law the title to the personal goods of the wife not held as a separate estate vested in the husband without an actual taking of the possession thereof and that the husband could not denude or divest himself of his marital right by merely declaring that the property belonged to his wife.

It appears that the plaintiff was married to her husband in 1904. At that time she was the owner of quite a number of horses, cattle and hogs, the cattle and hogs being the progenitors of the cattle and hogs sued for in the instant case. We infer from the record that the plaintiff owned the farm upon which she and her husband were living at the time of this lawsuit, and that she owned this farm at the time of their marriage. How she came into its possession prior to her marriage does not appear. Whether it was a separate estate from her former husband or a general estate, the record is somewhat in doubt. The plaintiff testified that the property was hers. C. W. Graham testified that he had never owned any of the stock for which this suit was brought; that his wife had owned the same all the time; that he had never exercised rights of ownership of it, nor mortgaged it; nor had he ever attempted to sell or dispose of it, or any of it, in any way, except with the consent and direction of his wife; that his wife had always claimed the property, and it was hers at the time it was killed. He testified that his wife owned stock, cattle, horses and mules at the time of their marriage, and that the stock for the killing of which this suit is brought were the offspring of the original stock owned by her at the time of their marriage; that there had never been any marriage contract or other agreement between him and his wife, excluding his marital rights in her personal property. He testified that he managed the farm upon which he and his wife lived. The

plaintiff testified, that in addition to the specific property mentioned by her husband, she owned the same and other property at the time of her marriage to C. W. Graham.

In support of the fourth assignment of error, counsel for the Railway Company rely upon the cases of Wade v. Cantrell, 1 Head., 345; Snyder v. Jett, 138 Tenn., 211, 197 S. W., 488.

In Wade v. Cantrell, supra, the administrators of Wade instituted a replevin suit to recover a negro girl slave named Emmaline from Caroline Wade, widow of the intestate. The slave was given to Mrs. Wade by her father—an absolute gift. The husband always said the slave belonged to his wife. He set up no claim to said slave. The court held that a man cannot denude himself of his right to property which the law vests in him by simply declaring that it belonged to his wife. His administrators were successful.

In Snyder v. Jett, supra, Mrs. Synder brought suit against J. C. Jett and others for damages or destruction of her business which she operated in Park City, near Knoxville, at that time, now a part of the city proper. This suit was instituted sometime during the year 1913. The defendants filed a plea in abatement in which they alleged that on the 10th day of January, 1913, at the time the alleged business was destroyed, plaintiff was a married woman and was a married woman at the time the plea was filed, living with her husband, one John Snyder, the same John Snyder not being joined with her in the suit, either in the summon or the declaration. This plea was sustained. It was held that the business was the property of the husband and the statute of 1913 could not deprive him of such property.

In the Wade case, supra, the administrators were representing the estate and there were creditors of Wade when the negro girl slave was replevied. In the Jett case the defense was made by plea in abatement.

A married woman could have a separate estate in personal property prior to the Woman's Emancipation Act; a separate estate may be created by parol gift, and express words are not required to create such an estate where a gift is from husband to wife. Carpenter v. Franklin, 89 Tenn., 145, 14 S. W., 484; Templeton v. Brown, 86 Tenn., 50, 5 S. W., 441; Williford v. Phelan, 120 Tenn., 596, 113 S. W., 365.

After the passage of the Married Woman's Act, chap. 126, Acts 1919, married women became fully emancipated from all disabilities on account of coverture and the common law. Section 1 of said Act provides that "marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition, or disposition of property of any sort, or as to her capacity to make contracts and to do all acts in reference to property which she could lawfully

do if she were not married; but every woman now married, or hereafter to be married, shall have the same capacity to acquire, hold, manage, control, use, enjoy, and dispose of, all property, real and personal, in possession, and to make any contract in reference to it, and to bind herself personally, and to sue and be sued with all the rights and incidents thereof as if she were not married."

The husband may relinquish his marital rights in his wife's estate. In 13 R. C. L., page 1054, it is said: "The husband may waive his rights, and permit his wife to retain her money or other personal chattels; and wherever he manifests such intention, and shows by his conduct that he is not to have or derive any benefit from the personal property belonging to his wife, but that he intends it to remain for her benefit, courts of equity will not deprive her of the property, and this is especially true when creditors are not deprived of any of their rights."

In the instant case we have no creditors claiming this property. There is an admitted liability on the part of the defendant that it is responsible in damages for the value of the stock to someone, and it seeks to escape this liability by saying the husband should have sued. The undisputed proof shows that Mrs. Graham was in possession of this property, and our Supreme Court in First National Bank v. Union Railway Company, 153 Tenn., 386, — S. W. —, held that "possession by conditional vendee alone is sufficient to support action by him for trespass or trespass on the case against a third party in injuring property, and that either the conditional vendor or vendee can sue for injury to property by a third party."

The same rule applies where the relationship is that of mortgagor and mortgagee; also where the relationship is that of bailor and bailee. A recovery by one is a bar to a recovery by the other one. The underlying principle is that the bailee, vendee, or mortgagor is in rightful possession of the property, and that possession alone is sufficient to support an action for trespass or trespass on the case. An instruction requested must be strictly correct, otherwise the trial judge cannot be put in error by its refusal to charge it. Railroad v. Naive, 112 Tenn., 239, 79 S. W., 134.

We are of opinion that the instruction presented is not strictly correct. It does not provide that, nothing else appearing. In other words, the property sued for could have been the plaintiff's separate estate and the jury could have found that it was her separate estate, and had they followed the instruction requested they would have defeated plaintiff's action although the property was her separate estate.

In Williford v. Phelan, supra, it was held that personal property in possession of the wife under the common law is the possession of

the husband, and is in law the property of the husband, nothing else appearing to show a separate property of the wife.

We are of opinion, that the special request was properly refused, and we think the merits of this case have been reached. There is evidence to sustain the verdict of the jury, which has been approved by the trial court.

It results that all of the assignments of error are overruled and the judgment of the lower court is affirmed.

The plaintiff will recover of the defendant the amount of the judgment below, with interest thereon from the date of its rendition and all the costs of the cause. Execution will issue against the defendant and surety on appeal bond for the cost of the appeal.

Heiskell and Senter, JJ., concur.